UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LILIA CRETCHER and DOUGLAS HORTON,

                              Plaintiffs,

                 v.

U.S. BANK N.A.,

                              Defendant.

**MEMORANDUM AND ORDER**
19-CV-6764 (LDH)(LB)

---

LASHANN DEARCY HALL, United States District Judge:

      Plaintiffs Lilia Cretcher and Douglas Horton assert claims against Defendant U.S. Bank for negligence, trespass, and private nuisance under New York state law.  Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

## BACKGROUND[1]

      Plaintiffs reside at 74 Cedar St., Brooklyn, New York, 11221 ("74 Cedar"), a single-family residential property they purchased in November of 2016.  (Compl. ¶ 6, ECF No. 1.)  74 Cedar shares a central inner wall with 72 Cedar Street ("72 Cedar").  (*Id.* ¶ 15.)  Together, the two single-family homes form a single freestanding structure.  (*Id.*)  Plaintiffs allege that 72 Cedar has been legally abandoned and in considerable disrepair since at least November 2016 and remains in the same "disintegrating condition" today.  (*Id.* ¶ 26.)  The legal owner of 72 Cedar is deceased, 72 Cedar has been vacant since at least November 2016, and Defendant is the mortgagee of 72 Cedar.  (*Id.* ¶¶ 17–25.)

---

[1] The following facts are taken from the complaint and are assumed to be true for the purpose of evaluating the instant motion.

1

Plaintiffs allege Defendant violated New York Real Property Actions and Proceedings Law ("RPAPL") § 1308, which requires mortgagees to maintain "vacant and abandoned one-to-four-family residential real property," and makes them liable for damages caused by their failure to do so. (*Id.* ¶¶ 1, 12.) Rainwater leakage from Defendant's roof, which has been ongoing since December 2018, has caused Plaintiffs to sustain thousands of dollars in water damage. (*Id.* ¶¶ 39, 41–43.) At some time after December 2018 and prior to filing the complaint, Plaintiffs gave notice to Defendant of the water damage resulting from the leak, which resulted in Plaintiffs allowing Defendant's contractor to access 74 Cedar to inspect and photograph the water damage on March 5, 2019. (*Id.* ¶¶ 54–58.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

**DISCUSSION**

**I.    Trespass**

A trespass is "an intentional [physical] entry onto the [property] of another without justification or permission." *Woodhull v. Town of Riverhead*, 46 A.D.3d 802, 804 (N.Y. App. Div. 2008). It includes "the entry of a substance onto land[,]" such as water or debris. *Berenger v. 261 West LLC*, 93 A.D.3d 175, 181 (N.Y. App. Div. 2012) (citing cases). Plaintiff does not contest that to be liable for trespass, a defendant must control or possess the neighboring property. (*See* Def.'s Mem. L. Supp. Mot. Dismiss ("Def.'s Mem.") 9–10, ECF No. 13-1; Pls.' Mem. L. Opp. Def.'s Mot Dismiss ("Pl.'s Mem.") 7–8, ECF No. 14.) Defendant presses that because of its status as a mortgagee, Defendant did not maintain possession or control over 72 Cedar. (Def.'s Mem. 9–10.) The Court disagrees.

Plaintiffs allege that Defendant, the mortgagee, is in possession of the property, *i.e.*, controls access, inspection, and repair of the property. (*See* Compl. ¶¶ 54, 57, 60, 62.) On a motion to dismiss, that alone is enough to establish that Defendant controlled 72 Cedar. There is not, as Defendant seems to imply, a rule of law that a mortgagee can never be found in possession or control of the property. (*See* Def.'s Mem. 8.) Rather, in the cases cited by Defendant, a mortgagee was deemed to be out-of-possession or control of a property after a fact-based inquiry post-discovery. *See Bowles v. City of New York*, 154 A.D.2d 324, 324-25 (N.Y. App. Div. 1989) (affirming trial court's finding on a motion for summary judgment that the mortgagee, despite being the titleholder, neither maintained, controlled, nor reserved any rights to reenter the premises where the mortgagor served as landlord of the property, held herself out as owner of the property, collected rents, made repairs to the property, was responsible for compliance with local regulations, and listed herself as owner of the building with the New York

3

City Department of Buildings); *Jackson v. Federal Home Loan Mortg*, No. 95-CV-2657, 1996 WL 1088201 at *2 (E.D.N.Y. July 2, 1996) (recognizing in deciding a motion for summary judgment that an out-of-possession mortgagee is not liable for personal injuries occurring on the property where that mortgagee "never maintain[s], control[s], or reserve[s] the right to reenter the premises"); *accord Moran v. Regency Sav. Bank, F.S.B.*, 20 A.D.3d 305, 306 (N.Y. App. Div. 2005) (affirming trial court's determination on a motion for summary judgment that "out-of-possession mortgage holders who neither maintained nor controlled the premises where plaintiff's alleged accident occurred," were not responsible for personal injury suit).

Defendant's remaining arguments are likewise unavailing. Defendant presses that Plaintiffs' only allegations supporting trespass are violations of maintenance standards in RPAPL § 1308 and that such violations are insufficient to sustain a trespass claim. (*See* Def.'s Mem. 9; Def.'s Reply Mem. L. Supp. Def.'s Mot. Dismiss ("Def.'s Reply.") 6–7, ECF No. 15.) However, even if Plaintiffs' trespass claims are partially based on alleged violations of RPAPL § 1308, Plaintiffs' trespass allegations go beyond the statute, as Plaintiffs allege that water entered 74 Cedar from 72 Cedar. (*See* Compl. ¶¶ 39–40.)

Lastly, Defendant contends that Plaintiffs have insufficiently pleaded notice. (Def.'s Reply 6.) To sustain a trespass claim, the alleged intrusion "must at least be the immediate or inevitable consequence of what [a defendant] willfully does, or which [a defendant] does so negligently as to amount to willfulness." *Phillips v. Sun Oil Co.*, 307 N.Y. 328, 331, 121 N.E.2d 249 (N.Y. 1954). In application, New York courts have found that a defendant is not liable for leaks onto plaintiff's land unless a defendant had good reason to know or expect that conditions were such that there would be passage of the offending substance from defendant's to plaintiff's land. *Id.*; *Berenger*, 93 A.D.3d at 182 (denying defendant's summary judgment motion on

4

trespass because there were triable issues of act as to whether defendant knew or should have known about a glycol leak and whether that leak was recurring such that the defendant had good reason to expect that glycol would leak again). Here, as to the water leak, Plaintiffs' allegations, taken together, support the inference that Defendant knew or should have known about the existence of the leak, and had good reason to expect the water would leak again. (*See* Compl. ¶¶ 39, 43, 51, 54, 56.) Plaintiffs allege that the water damage is ongoing since December 2018, through the date of the filing of the complaint on December 2, 2019. (*Id.* ¶ 43.) And, at some time in that period, Plaintiffs allege that they gave notice to Defendant of the water damage resulting from the leak, which resulted in Plaintiffs allowing Defendant's contractor to access 74 Cedar to inspect and photograph the water damage on March 5, 2019. (*Id.* ¶¶ 54–58.) While the timeline in the complaint is not completely clear as to what Defendant knew and when, construing all inferences in Plaintiffs' favor, their allegations with respect to the water leak are sufficient to sustain their trespass claim.

## II.     Nuisance

A defendant is liable for private nuisance when it "invades another's interest in the private use and enjoyment of land, and the invasion is either intentional, negligent or related to abnormally dangerous activities." *Haire v. Bonelli*, 57 A.D.3d 1354, 1358 (N.Y. App. Div. 2008) (citing *Copart Indus., Inc. v. Consol. Edison Co. of New York*, 41 N.Y.2d 564, 569 (N.Y. 1977)). Plaintiff's theory of liability for nuisance is based in negligence. (*See* Compl. ¶ 75.) Defendant presses that Plaintiffs fail to allege that Defendant was the actual cause of interference. (Def.'s Mem. 10.) Not so. A "[p]rivate nuisance occurs when, among other things, an interference is 'caused by another's conduct in acting or failure to act.'" *Cangemi v. Town of E. Hampton*, 374 F. Supp. 3d 227, 235 (E.D.N.Y. 2019) (quoting *Copart Indus., Inc.*, 41

5

N.Y.2d at 570).  Here, Plaintiffs aver that Defendant's failure to inspect, secure, and maintain 72 Cedar was the cause of significant leaks into 74 Cedar, or in other words, Defendant was negligent.  (Compl. ¶¶ 39, 75.)

Next, Defendant contends that Plaintiffs do not plead any viable duty to support a nuisance claim under a negligence theory.  (Def.'s Mem. 10–11.)  Again, Defendant is incorrect.  "The duty to abate a private nuisance existing on real property arises from the power to possess the property and control the activities that occur on it." *Taggart v. Costabile*, 131 A.D.3d 243, 247  (N.Y. App. Div. 2015).  Any argument that Defendant did not possess or control 72 Cedar, (Def.'s Mem. 11), has already been rejected.

### III.   Per Se Negligence

Under New York law, a plaintiff must establish three elements to sustain a negligence claim: (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty; and (3) that plaintiff's injury was substantially caused by that breach.  *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002).  "As a rule, violation of a State statute that imposes a specific duty constitutes negligence per se," which establishes the duty and breach elements of a negligence claim.  *Elliott v. City of New York*, 95 N.Y.2d 730, 734, 747 N.E.2d 760 (N.Y. 2001); *Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *8 (S.D.N.Y. Mar. 29, 2018).  Plaintiffs argue that their negligence claim should succeed on a per se negligence theory, as Defendant's violation of RPAPL § 1308 establishes the duty and breach elements.  (Pls.' Mem. 4–7; *see also* Compl. ¶¶ 65–68.)  The Court disagrees.

Whether negligence per se will be imposed in a particular case is "a question of legislative intent; more specifically, whether the underlying policy of the legislation is the protection of a certain class of individuals and whether judicial recognition of a statutory

6

standard will further that policy of protection." *Gain v. Eastern Reinforcing Service, Inc.*, 193 A.D.2d 255, 258–59 (N.Y. App. Div. 1993). Importantly, the Appellate Division has cautioned that "the terms of a regulatory statute should not receive automatic construction as a standard of care in negligence litigation, for judgment should be exercised as to the appropriateness of the statute for that purpose." *Dance v. Town of Southampton*, 467 N.Y.S.2d 203, 206 (N.Y. App. Div. 1983) (citation omitted). RPAPL § 1308 covers a mortgagee's obligations to inspect, secure and maintain vacant and abandoned residential property. *See* N.Y. Real Prop. Acts Law § 1308. The question of whether negligence per se is applicable here will turn on the Court's interpretation of the purpose of § 1308, *i.e.*, whether the statute was enacted to protect a certain class of individuals, and judicial recognition of a statutorily-created duty will further the policy of protection.

Here, according to the legislative history of the bill, § 1308 was enacted with the following justification:

> The longer an abandoned home stays in foreclosure, the greater the chances of blight, resulting in deterioration in value to the property itself and the neighborhood at large. The longer an abandoned or vacant property languishes in foreclosure the more likely it will drag down the neighborhood it is in as well, through delinquency, blight and distressed pricing in those areas. High concentrations of vacant properties in certain parts of the State are taking a heavy toll on our towns and communities.

H.R. 8318, 238th Gen. Assemb., Reg. Sess. (N.Y. 2015). The New York State Department of Financial Services and the municipality in which a residential property is located have the right to enforce the obligations of the section. *See* N.Y. Real Prop. Acts Law § 1308(8)(c). Section 1308(8)(a) provides that a court or hearing officer, upon a finding of violation by a preponderance standard, may levy a civil penalty in the amount of up to five hundred dollars per day per property for each day the violation persisted. *Id*. § 1308(8)(a). All indications are that

the goal of § 1308 is to prevent blight, not to compensate individual homeowners that are injured by blight. Accordingly, the legislative history and statutory text alone suggest that negligence per se is not a viable theory of liability here.

And, contrary to Plaintiffs' urging, the two cases cited by them on this point support a finding that per se negligence is not available under § 1308. Plaintiffs first cite to *Dance v. Town of Southampton*, which addressed whether a violation of a New York Vehicular and Traffic Law, which requires that drivers report certain disabilities to the Commissioner of Motor Vehicles, could supply the basis for a negligence per se theory of liability. *See Dance*, 467 N.Y.S.2d at 205. There, the plaintiff-driver of a car had failed to report a disability to the Commissioner of Motor Vehicles, was hit by another car in a car accident, and, in defense, the defendant argued that the plaintiff-driver was the proximate cause of the accident under a negligence per se theory. *Id.* The Appellate Division found that "sound policy" weighed against adopting the violation of the reporting law as a basis for per se negligence. *Id.* at 207. Specifically, because someone who violated the reporting provisions might actually have been exercising due care in operating a vehicle, the reporting requirements did not create a standard of care to adopt in a negligence cause of action. *Id.* at 207–08. Although the *Dance* court did not find negligence per se applicable, Plaintiffs nonetheless argue that the policy consideration raised in *Dance* support the application of such a theory of liability here. (Pls.' Mem. 6.) According to Plaintiff, RPAPL § 1308 creates a "crystal clear" standard of care, and therefore can supply the basis for a negligence per se claim. (*Id.*) Not so. Even assuming that § 1308 supplies a standard of care, the *Dance* court did not state that this consideration is the only relevant policy consideration and as already explained, it does not appear that the purpose of the statute is to provide a private right of action.

8

Plaintiffs' second case, *Gain v. Eastern Reinforcing Service, Inc.*, likewise does not supply a persuasive basis for the Court to find that negligence per se is available to Plaintiffs. To the contrary, it counsels against it. In *Gain*, the Appellate Division undertook an analysis of whether a violation of a provision of New York Labor Law, which levies fines on employers or other individuals who deal in close contact with high-voltage lines and fail to take certain precautions, could form the basis for a negligence per se claim. *Gain*, 193 A.D.2d at 257. There, an individual was electrocuted when steel rings came in contact with an overhead high-voltage power line and died. *Id.* at 256. His estate sued his employer under the relevant provision of New York Labor Law, which did not give a private right of action but allowed for enforcement by the Commissioner of Labor. *Id.* In an analysis of the statute's purpose, the court concluded that:

> the legislative goal is not to establish a vehicle for the compensation of persons injured by high-voltage electricity, but rather to achieve the *prevention* of such injuries through the imposition of generally applicable safety standards and the creation of a mechanism by which the Commissioner of Labor would have broad regulatory and remedial powers to intervene in an effort to insure compliance.

*Id.* at 258 (emphasis in original). A similar conclusion is warranted here. Section 1308 was enacted to achieve the prevention of neighborhood-wide blight rather than provide recourse for individual neighbors and to provide the Department of Financial Services a mechanism to ensure compliance. Accordingly, Plaintiff has not adequately pleaded a duty and breach under a negligence per se theory.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint is GRANTED in part and DENIED in part. Plaintiffs' trespass and nuisance claims survive.

9

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
       March 19, 2021  L<small>A</small>SHANN D<small>E</small>ARCY HALL
       United States District Judge